**Carl Daniel LOCKETT, Petitioner,**

v.

**S.W. PUCKETT, Commissioner, Mississippi Department of Corrections, Respondent.**

**No. CIV. A. 3:94–CV–658BN.**

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 16, 1997.

David Boies, Jeffrey L. Friesen, Paul M. Dodyk, Cravath, Swaine & Moore, New York, NY, Julie A. Epps, Jackson, MS, William S. Moore, Jackson, MS, Andre' L.V. de Gruy, Jackson, MS, for plaintiff.

Leslie S. Lee, Marvin L. White, Jr., Office of the Attorney General, Jackson, MS, for defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Petitioner's Motion to Alter or Amend Judgment Pursuant to Fed.R.Civ.P. 59(e).[1] Having considered the Motion, the Response of the Respondent (hereinafter "the State"), the Rebuttal and all applicable legal authorities, the Court finds that the Motion is well taken and should be granted.

### I. Factual Background and Procedural History

The detailed facts of this case are contained in the October 16, 1997, Opinion and Order issued by this Court and will not be reiterated here. *Lockett v. Puckett,* 980

---

1. That rule provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R.Civ.P. 59(e).

F.Supp. 201 (S.D.Miss. 1997) (hereinafter "October Opinion"). In the October Opinion, this Court concluded that the only habeas relief to which the Petitioner, Carl Daniel Lockett ("Lockett"), was entitled was the vacation of his death sentence for the murder of John Earl Calhoun. *Id.* at 107.[2] The Court denied all other requested relief and upheld Lockett's capital murder convictions for the deaths of John Earl and Geraldine Calhoun and the death sentence imposed upon Lockett for the murder of Geraldine Calhoun. *Id.* at 107–108.

On October 23, 1997, the Mississippi Supreme Court rendered its decision in *State v. Berryhill,* 703 So.2d 250 (Miss. 1997). The first paragraph of the *Berryhill* decision states as follows: [3]

> In this case, we consider for the first time whether a capital murder indictment which is predicated upon the underlying crime of burglary must specifically state the intended felony which comprises the charged burglary. We conclude that such capital murder indictments must contain an allegation of the specific criminal intent that constitutes an element of the burglary. Accordingly, we affirm the trial court's judgment below to that effect.

*Berryhill,* 703 So.2d at 251–52, ¶ 1. The *Berryhill* decision is the basis for Lockett's Motion to Alter or Amend.

## II. *Applicable Legal Standard*

The instant Motion was served within ten days of the entry of the Final Judgment in this matter. Petitioner, therefore, has correctly characterized the Motion as a Rule 59(e) Motion. *See Snavely v. Nordskog Elec. Vehicles "Marketeer",* 947 F.Supp. 999, 1010

---

**2.** For ease of reference, the Court will cite to the page numbers in the original slip opinion.

**3.** The Court will discuss the holding and rationale of the *Berryhill* decision in a subsequent portion of this opinion.

**4.** Ground Twelve of Lockett's Habeas Petition states as follows:

> The indictments are void as to capital murder because they fail to set out the essential elements of the felonies underlying the offense of burglary in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Habeas Petition at 30.

---

n. 4 (S.D.Miss.1995) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990)). In *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625 (S.D.Miss.1990), this Court made clear that it recognizes only three possible grounds for any motion to reconsider: 1) an intervening change in controlling law, 2) the availability of new evidence not previously available, and 3) the need to correct a clear error of law or prevent manifest injustice. *Id.* at 626. In his Motion, Petitioner relies upon the alternative grounds that (1) the *Berryhill* decision, even if it is "new" law, is an intervening change in controlling substantive law which applies retroactively to this case; and (2) the *Berryhill* decision was dictated by existing precedent and, therefore, the decision of this Court on Ground Twelve [4] may be characterized as a clear error of law which should be corrected. The Court agrees with the Petitioner that he is entitled to habeas relief based upon the second characterization of the *Berryhill* decision.

## III. *Analysis*

### A. *The Indictments*

As noted by this Court in the October Opinion, the indictments for each murder are similar. October Opinion at 75. Therefore, the Court need only quote the indictment from Case 1 [5] which states in relevant part: [6]

> Carl Daniel Lockett ... did ... wilfully, unlawfully, feloniously and of his malice aforethought kill and murder John Earl Calhoun, a human being, while he the said Carl Daniel Lockett, was engaged in the crimes of burglary and robbery, in that he had forcibly, burglariously, unlawfully, wil-

---

**5.** As in the October Opinion, the Court will refer to the proceedings involving Lockett's conviction for the murder of John Earl Calhoun as "Case 1" and the proceedings involving Lockett's conviction for the murder of Geraldine Calhoun as "Case 2."

**6.** Petitioner correctly notes that in the October Opinion, this Court inadvertently omitted the phrase "to do violence" from the quotation of the indictment.

fully and feloniously broken and entered in to the dwelling house of the said John Earl Calhoun and Geraldine Calhoun with the intent to, once inside, steal the personal property situated therein and *to unlawfully do violence to the persons situated therein;* and further in that he did then wilfully, unlawfully, feloniously, violently and forcibly take, steal, seize, rob and carry away from the person and from the presence of the said John Earl Calhoun and from the person and from the presence of Geraldine Calhoun a certain billfold of value along with its contents of value and all of same being the personal property of the said John Earl Calhoun: and the Grand Jury charges that such capital murder is in violation of § 97–3–19(2)(e) of the Mississippi Code of 1972, as amended . . . .

Indictment, Case 1 (R. 403) (emphasis added).[7]

### B. *The October Opinion*

In the October Opinion, this Court relied upon *McKay v. Collins,* 12 F.3d 66 (5th Cir.), *cert. denied sub nom Williams v. Scott,* 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994), in reaching its decision to address the merits of Ground Twelve. October Opinion at 74. In *McKay,* the United States Court of Appeals for the Fifth Circuit concluded as follows:

The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. . . . Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue.

*McKay,* 12 F.3d at 68. This Court concluded that:

[T]he Mississippi Supreme Court clearly declined to consider this issue on the merits by finding the issue to be procedurally

barred from review. Based upon the holding in *Garrett,* this Court will examine the indictments to determine whether they were sufficient to vest jurisdiction in the trial courts.

October Opinion at 75 (citing *Garrett v. McCotter,* 807 F.2d 482, 484 (5th Cir.1987)). Because the State did not argue that the issue was procedurally barred, only that it had been presented to the state court and was thus barred from habeas review, this Court did not address the procedural bar issue in any detail in the October Opinion. The Court simply noted that "[t]he parties have not cited, and the Court has not found, any Fifth Circuit precedent concerning whether procedural default of the claim in state court would preclude habeas review of the sufficiency of an indictment in federal court." *Id.* at 74–75.

### C. *Is the Issue of the Sufficiency of the Indictment Procedurally Barred?*

In response to the instant Motion, the State has belatedly asserted that Lockett's challenge to the sufficiency of the indictment is procedurally barred from review by this Court because the Mississippi Supreme Court held the claim to be "both time barred and successive writ barred." *Lockett v. State,* 656 So.2d 68, 73 (Miss.), *cert. denied,* 515 U.S. 1150, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995); *Lockett v. State,* 656 So.2d 76, 78–79 (Miss.), *cert. denied,* 515 U.S. 1150, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995). Lockett asserts that the State has waived the procedural default argument by not raising it prior to the entry of the Final Judgment in this matter.

■ The Court agrees with Lockett that the State has waived any argument based upon the procedural default of this particular issue. *See Cupit v. Whitley,* 28 F.3d 532, 534 (5th Cir.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995). *See*

---

**7.** The indictment in Case 2 (R. 3) is similar except that it includes the facts surrounding the murder of Geraldine Calhoun, including kidnapping and the taking of property from the Calhoun automobile. Both indictments allege a violation of Miss.Code Ann. § 97–3–19(2)(e), the Mississippi felony murder statute, which provides in relevant part that "[t]he killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, . . . or in any attempt to commit such felonies . . . ."

*also McKay,* 12 F.3d at 68 n. 3 (declining to address the procedural default issue, although the district court had extensively addressed the issue, because the respondent did not argue that "the Texas court found the indictment sufficiency issue procedurally defaulted").

■ Alternatively, the Court concludes that a claim challenging the jurisdiction of the state court due to the insufficiency of an indictment is not subject to procedural default. Although the Fifth Circuit has not addressed this issue, the Court is persuaded by the reasoning of other Circuit Courts of Appeal which have addressed the issue. In *Kelly v. United States,* 29 F.3d 1107 (7th Cir.1994), the court, in analyzing a petition pursuant to 28 U.S.C. § 2255,[8] concluded that "a jurisdictional defect cannot be procedurally defaulted ...." *Id.* at 1113. The *Kelly* court rationalized that "[t]he original purpose of the writ of habeas corpus ... was to allow relief where a defendant was convicted by a court that lacked jurisdiction." *Id.* at 1113 n. 2 (citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The United States Court of Appeals for the Eleventh Circuit has also addressed the procedural default issue in the context of a claim raised for the first time in the petitioner's third, successive habeas petition. *Gonzalez v. Abbott,* 967 F.2d 1499, 1504 (11th Cir.1992), *cert. denied,* 510 U.S. 894, 114 S.Ct. 257, 126 L.Ed.2d 210 (1993). In that case, before the petitioner's conviction was final, the Georgia legislature repealed a statute "creating the substantive offense upon which his indictment for conspiracy to traffic in cocaine was predicated." *Id.* The petitioner argued that he "was convicted for conduct that was not a crime and that he was there-

fore 'actually innocent.'" *Id.* (citations omitted). The Eleventh Circuit concluded that because of the actual innocence argument, the petitioner's claim was not procedurally barred from review. *Id.* (citing *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977)).

In this case, Lockett is challenging the jurisdiction of the state trial courts to determine his fate on the basis that the indictments charging him with capital murder are void. Another way of viewing this argument is that Lockett is asserting his actual innocence of the crime of capital murder as charged in the indictments.[9] The Court finds that such challenges to the jurisdiction of a court to try and convict the Petitioner of capital murder may not be procedurally barred.

### D. *The Berryhill Decision*

Berryhill was indicted for capital murder "while engaged in the commission of a burglary, attempted kidnapping of a child, possession of a firearm by a convicted felon, and as an habitual offender." *Berryhill* at 252, ¶ 2. The only facts contained in the decision are that Berryhill murdered his girlfriend in her parents' home. *Id.* Prior to trial, Berryhill moved to quash the indictment or to demur on the ground that the indictment failed to charge which underlying offense comprised the charged burglary. *Id.* ¶ 3. The State responded by letter, advising Berryhill that the underlying offense to the burglary count was intent to commit an assault. *Id.* Several months later and five days prior to the beginning of Berryhill's trial, the State sent him a second letter advising that it may attempt to prove the burglary on the basis of kidnapping or attempt to commit kidnapping, in addition to the intent to commit assault. The day before trial, the State informed the

8. The Seventh Circuit stated that a section 2255 petition "is the federal prisoner's analog to the petition for habeas corpus under 28 U.S.C. § 2254." *Kelly,* 29 F.3d at 1112.

9. Lockett has not asserted, and indeed could not assert, that he is factually innocent of killing John Earl and Geraldine Calhoun. This Court recognized as much in the October Opinion, noting the omission from Lockett's Habeas Petition of any facts concerning the actual murders of the Calhouns. October Opinion at 2, n. 2. Although

Lockett does not concede that he is guilty of murder, it appears to the Court that the overwhelming weight of the evidence points to such a conclusion. That issue, however, is not before the Court. The very narrow issue which this Court must now decide is whether the indictments charging Lockett with *capital* murder, specifically the burglary portions of such indictments, were indeed sufficient to charge him with this crime.

trial court after some conversation in chambers that it would "proceed with the intended crime of assault." *Id.* ¶ 4.

After Berryhill's jury was selected and sworn, the trial court addressed several motions, including a renewed Motion to Quash and/or Demur to the indictment presented by Berryhill. *Id.* ¶ 5. Berryhill asserted that "he had not been given accurate or adequate notice by the indictment, and also that the State was trying to avoid the constitutional requirement that a grand jury present a person with criminal charges." *Id.* The State asserted that the Motion was untimely and that a capital murder indictment based upon the underlying felony of burglary was not required "to state the offense which comprised the burglary charge." *Id.*

The trial court concluded that the capital murder portion of the indictment was insufficient because it did not state the underlying crime upon which the burglary charge was predicated. *Id.* at 252, ¶ 6. The trial court quashed the capital portion of the indictment and invited the State to proceed with the charge of simple murder. The parties then agreed to a plea bargain, and Berryhill pled guilty to simple murder. Berryhill was sentenced to life without parole as an habitual offender. *Id.* Thereafter, the State appealed the ruling of the trial court in quashing the capital portion of the indictment on the basis that Berryhill's motion was filed after the issuance of the venire facias, and that capital murder indictments predicated on burglary need not state the felony which supports the burglary charge. *Id.* at 252–53, ¶ 7. With regard to the relief sought, the Mississippi Supreme Court stated as follows:

> The State's brief does not contain a prayer for relief, so we have assumed that it is seeking a pronouncement from this Court on the requirements of capital murder indictments where the underlying crime is burglary and the power of the trial court to grant a motion to quash after a jury has been impaneled.

*Id.*

Berryhill asserted that the court lacked jurisdiction to consider the appeal because the trial court had only quashed the capital portion of the indictment, not the entire indictment. *Id.* at 253, ¶ 9. The court rejected this argument concluding that it had jurisdiction to consider the appeal because "[t]he trial court's quashal was in fact the final judgment on the capital murder charge, in that the 'judicial labor [wa]s at an end' with regard to that charge." *Id.* ¶ 10 (quoting *State v. Burrill,* 312 So.2d 1, 3 (Miss.1975) (citation omitted)).

The court then addressed the timeliness of Berryhill's Motion to Quash. The State relied upon Miss.Code Ann. § 99–7–21 (1994) [10] and Miss.Code Ann. § 99–7–23 (1994) [11] to support its theory that the Motion to Quash was untimely and could not be renewed after the jury was chosen and sworn. *Id.* at 253, ¶ 12. Berryhill asserted that his Motion was initially filed five months before the issuance of the venire facias, and was therefore timely. Alternatively, Berryhill asserted that an objection to the sufficiency of an indictment may be raised at any time. *Id.* ¶ 14.

The Mississippi Supreme Court agreed with Berryhill that his Motion to Quash was timely pursuant to Miss.Code Ann. § 99–7–21, even though he did not press for a ruling on the Motion until after the jury was impaneled. *Id.* at 253–54, ¶ 15. The court further noted that Miss.Code Ann. § 99–7–23 was not applicable because it applied only to the timeliness of defects arising outside the face of the indictment and not to defects on the

---

**10.** This statute provides that:

> All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases. The court for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended, and thereupon the trial shall proceed as if such defect had not appeared.

Miss.Code Ann. § 99–7–21 (1994).

**11.** This statute provides that:

> All objections to an indictment for any defect dehors the face thereof, presenting an issue to be tried by the court, shall be taken by motion to quash the indictment, and not otherwise, within the time allowed for demurrer, and with the right to amend, as provided in the last preceding section.

Miss.Code Ann. § 99–7–23 (1994).

face of the document such as the insufficiency of the charge. *Id.* at 254 n. 3. The court then concluded that "challenges to the substantive sufficiency of an indictment are not waivable" and "may be first raised at anytime, including on appeal." *Id.* ¶ 16. The court, therefore, rejected the timeliness argument asserted by the State. *Id.*

The court, in addressing the merits of the issue, set forth the basis for the ruling by the trial court.

> In assessing the value of the State's various letters about what it would be proceeding with in its burglary proof, the court stated that "[i]f it were as simple as allowing the District Attorney or the office of the District Attorney to advise of the crime then there would be no need for grand juries." The court stated that it was "of the opinion that the underlying felony of burglary which does not specify the specific crime with which the defendant broke and entered the premises and intended to commit, which could be probably one hundred different crimes and/or misdemeanors and still constitute the charge, does not adequately inform the Defendant of the nature of that particular charge and therefore that portion of the indictment is not sufficient."

*Berryhill* at 254, ¶ 18.

The *Berryhill* court noted that this very issue was raised in *Lambert v. State,* 462 So.2d 308 (Miss.1984). The *Lambert* court, however, declined to address the sufficiency of a capital murder indictment which failed to specify the crime comprising the burglary portion of the indictment because the defendant was convicted only of simple murder. *Id.* at 254–55, ¶ 19. In dicta, however, the *Lambert* court noted the "long-standing holdings that burglary indictments were required to state the underlying offense lest they be fatally defective." *Id.* (citing *Lambert,* 462 So.2d at 311 (citing *Newburn v. State,* 205 So.2d 260 (Miss.1967)); *State v. Buchanan,* 75 Miss. 349, 22 So. 875 (1898)). Because the *Lambert* court was a 4–4 decision, the conviction and sentence were not disturbed. *Id.* ¶ 19. All four dissenting Justices, however, expressly stated that "capital murder indictments that arise out of a murder in the

course of a burglary would need to state the constituent crime of the burglary." *Id.* at 255, ¶ 20.

The *Berryhill* court also discussed the previous decision in *Moore v. State,* 344 So.2d 731 (Miss.1977). In that case, the defendant was charged with capital murder in the course of a burglary, with the burglary portion of the indictment stating that he had committed burglary with the intent to rape. *Berryhill* at 255, ¶ 22. The defendant argued that the State must prove that the victim was actually raped. *Id.* The *Moore* court stated as follows:

> The elements of the crime of capital murder are: (1) the killing of a human being without authority of law; and (2) when done by any person engaged in the commission of the crime of burglary, etc.
>
> Our immediate inquiry is whether burglary was proven, inasmuch as burglary is an element of the crime charged. Burglary is denounced as a crime by Mississippi Code Annotated section 97–17–19 as follows:
>
> > Every person who shall be convicted of breaking and entering any dwelling house, in the day or night, *with intent to commit a crime,* shall be guilty of burglary, and be imprisoned in the penitentiary not more than ten years.
>
> The crime of burglary of a dwelling has two elements: (1) the burglarious breaking and entering a dwelling, *and* (2) *the felonious intent to commit some crime therein.* *Thames v. State,* 221 Miss. 573, 73 So.2d 134 (1954).
>
> *An indictment for burglary must state the particular crime the intruder intended to commit.* The indictment of defendant did so in this case, charging that he intended to commit the crime of rape. Defendant's argument that it was necessary to prove that defendant actually raped [the victim] is without merit. Only the intent need be proven to establish the second element of the crime of burglary.

*Moore,* 344 So.2d at 735 (emphasis added).

Based upon the holding in *Moore* and the various analyses in *Lambert,* the *Berryhill* court concluded that capital murder indict-

ments predicated on burglary "are required to state the underlying offense to the burglary." *Berryhill* at 255–56, ¶ 23. The *Berryhill* court offered two reasons for its holding: (1) adequate notice to the defendant, as set forth in detail previously; and (2) "a defendant cannot be put in jeopardy for crimes except those which a grand jury of his peers has presented." *Berryhill* at 257, ¶ 30.

With regard to the first reason, adequate notice to the defendant, the *Berryhill* court concluded as follows:

> Simply put, the level of notice that would reasonably enable a defendant to defend himself against a capital murder charge that is predicated upon burglary must, to be fair, include notice of the crime comprising the burglary. *Burglary is unlike robbery and all the other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime.* While it is true that the general rule finds indictments that track the language of the criminal statute to be sufficient, ... the fairer rule in case of capital murder arising out of burglary is that which we intimated in *Moore*, and would require the indictment to name the crime underlying the burglary in addition to tracking the capital murder statute.

*Id.* at 256, ¶ 24 (emphasis added) (citations omitted). The *Berryhill* court also reasoned that requiring the indictment, rather than the district attorney after indictment, to specify the crime upon which the burglary is predicated would prevent "evolving prosecutorial theories over the course of the postindictment proceedings." *Id.* at 256, ¶ 26.

As the trial court in this case noted, Berryhill could be accused of having committed hundreds of crimes in the course of his burglary if the State were allowed to decide as the prosecution proceeded what it wished to prove. Furthermore, the State's argument would pose a rather perverse inconsistency in this Court's jurisprudence. If one is indicted for burglary, and is thereby subject to fifteen years imprisonment, he is entitled to know the alleged underlying crime in order to be able to adequately defend himself. If one is indicted for capital murder in the commis-

sion of a burglary, however, and is thereby subject to lethal injection, he is not entitled to know the alleged underlying crime that he be adequately able to save his life. Suffice it to say that, in our opinion, it is undoubtedly more critical that a defendant be adequately able to defend himself against capital crimes than against simple felonies.

*Id.* ¶ 26.

The second reason for requiring specificity in felony murder indictments based upon burglary is the function of the grand jury in criminal proceedings. This second reason serves to prevent the prosecution from changing its theory of the case at every turn. Furthermore, "[t]he rule that absent waiver only a grand jury can charge a person with a crime such as burglary is found explicitly in the Fifth Amendment of the United States Constitution in cases of infamous crimes, and in Article 3, § 27 of the Mississippi Constitution." *Id.* at 258, ¶ 31.

The ultimate conclusion of the *Berryhill* court is as follows:

> We hold that capital murder indictments that are predicated upon the underlying felony of burglary must assert with specificity the felony that comprises the burglary. We therefore affirm the trial court's quashal of the capital portion of Berryhill's indictment, which was defective in this regard.

*Id.* at 258, ¶ 34.

### E. *Were Lockett's Indictments Defective?*

Lockett asserts that the indictments charging him with capital murder are deficient in that they failed to specify the underlying crime or crimes supporting the charge of burglary. Specifically, Lockett claims that the felony of larceny requires more than an assertion of an "intent to steal." Furthermore, according to Lockett, the "intent to ... unlawfully do violence" to the persons in the dwelling is not a crime upon which a charge of burglary may be predicated.

The State asserts that because the issue of the sufficiency of the indictment was presented to, although not decided by, the Mississippi Supreme Court, this issue is foreclosed

from habeas review. The Court has previously rejected this argument and will not address the argument any further in this opinion. *See* October Opinion at 73–75. The State also asserts that Lockett has not raised this issue in a timely manner as required by Miss.Code Ann. § 99–7–21. The State further claims that although the indictments charging Lockett with·capital murder are somewhat inartfully drawn, they sufficiently define the crime of larceny as the crime underlying the burglary. Finally, the State asserts that the portion of the October Opinion finding the indictments sufficient under federal law is dispositive of this issue, and the *Berryhill* holding has not affected this holding. The State asserts that:

> [A] decision interpreting state law … is basically unnecessary to the Court's decision as the question of what is sufficient under state law for an indictment is a state law question and not a ground upon which relief can be granted by a federal habeas court. ··

Response to Petitioner's Motion at 10.[12] The State does not address the Petitioner's claim that the burglary portions of the indictments charging him with intent to "do violence" as the underlying felony is simply not a crime.

 Initially, the Court acknowledges that the dual analysis in the October Opinion under state law, then federal law, was less than clear. October Opinion at 77. The federal constitutional standard, as set forth in the October Opinion, is as follows:

> The standard for determining the sufficiency of an indictment is based upon practical, not technical considerations. … The test involves minimal constitutional standards, not whether a better indictment could have been written…. The essential elements of the offense, including knowledge or intent, must be included in the indictment but need not be expressed in any specific terms…. The "plain and sen-

sible meaning of the language used" may give the defendant notice sufficient to meet the requirements of the sixth amendment…. An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.

*McKay*, 12 F.3d at 69 (citations omitted). The reason the Court concluded that the indictments were "sufficient" under this standard was based upon the previous conclusion that the indictments were sufficient under state law. As the State implicitly, if not explicitly, recognized in its initial Memorandum of Authorities in Support of Answer, the determination of whether an indictment is "fatally defective" under federal law necessarily requires an inquiry into the elements charging the offense as defined by state law. *See Garrett*, 807 F.2d at 483 (habeas court must look to state law in "determining whether a state indictment is sufficient to confer jurisdiction on a convicting court"); *Johnson v. Estelle*, 704 F.2d at 236 (habeas court must look to state law to determine whether a valid conviction could "result from the facts provable under the indictment"). The Court now concludes that the previous conclusion of this Court, denying habeas relief on Ground Twelve, was based upon a clear error of law which must now be corrected.

 The Court finds that the *Berryhill* decision is not "new law" as it is based on preexisting precedent and did not overrule any existing case law. The Court further finds that the *Berryhill* decision simply clarified and clearly stated for the first time that a capital murder indictment in Mississippi, predicated on the underlying felony of burglary, must state with specificity the underlying crime comprising the charge of burglary. Based upon these findings, the Court concludes that a portion of each indictment

---

12. The Court notes that this position is directly contrary to the one advanced by the State in its Memorandum in Support of Answer stated as follows:

> For an indictment to be "fatally defective," no circumstances can exist under which a valid conviction could result from facts provable under the indictment, *with state law providing the* *reference point for determining an indictment's sufficiency.*

Memorandum of Authorities in Support of Answer at 57 (emphasis added) (citing *Johnson v. .Estelle*, 704 F.2d 232, 236 (5th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984)).

charging Lockett with capital murder based upon the underlying felony of burglary is fatally defective.

The Court finds that the portion of the indictments attempting to define larceny as the underlying felony to support the burglary charge, although inartfully stated, adequately apprised Lockett of the basis for that portion of the burglary charge. The Court further finds, however, that the addition of the language "to do violence" was also an attempt to define some crime [13] upon which to base the burglary charge. For the following reasons, the Court concludes that the "to do violence" portion of the indictment must be quashed,[14] and Lockett's convictions for capital murder must be vacated.

In *Fisher v. State*, 481 So.2d 203 (Miss. 1985), the Mississippi Supreme Court addressed the felony murder statute where the indictment charged the defendant with capital murder predicated on the underlying felonies of rape and robbery. *Id.* at 212. The *Fisher* court stated that a capital murder conviction, based upon a felony murder indictment, "must be supported by evidence sufficient to support a conviction of both the murder and the underlying felony had either been charged alone." *Id.* (citations omitted).

Here, for reasons not apparent, the State took on the burden of proving two underlying felonies. In both the indictment and the jury instructions, the underlying felonies are stated "rape *and* robbery". In addition to all of this, causal nexus (... engaged in the commission of ...) must also be shown.

*Id.*

Similarly, in this case, the State undertook the burden of proving, in Case 1, the underlying felonies of burglary and robbery, and in Case 2, the underlying felonies of burglary,

robbery and kidnapping. Furthermore, in both indictments, the State also assumed the burden of proving the underlying felonies comprising the burglary charge which were, as stated in the indictments, the "intent to steal" *and* the "intent to unlawfully do violence" to the persons in the dwelling. Although this Court has concluded that the indictments, although barely, sufficiently charge the underlying crime of larceny, the "intent to do violence" is simply not a crime. Furthermore, as noted by the Petitioner, it was this "non-crime" upon which the prosecutor in both trials based his argument to support the charge of burglary. In Case 1, the prosecutor argued:

> He committed a burglary. He intended to commit a crime in there. Well, was the crime he intended to commit in there to steal or to do these persons bodily harm? *I submit that it was to do bodily harm.*

Case 1 (R. 610) (emphasis added). Similarly, in Case 2, the prosecutor stated as follows:

> Burglary, the first one, what is burglary? The opening or force used to go into a building, into a home, with the intent to commit some crime. That crime normally is larceny, stealing. Sometimes it could be *assault, to do violence to someone.* That would constitute the crime of burglary. Now, if Carl Lockett didn't show what his intent was by his actions and the results of those actions, we can't show it to you, but that showed exactly what happened and what he intended to do. *He intended to cause someone some serious bodily harm.*

Case 2 (R. 562) (emphasis added). Thus, even though the indictments were phrased in the conjunctive requiring proof of Lockett's intent to steal *and* intent to do violence, the prosecutor actually argued that Lockett in-

---

**13.** Perhaps the crime the State was attempting to allege was assault. In fact, the prosecutor argued that Lockett entered the dwelling with the intent to "do bodily harm" to someone. *See infra* at 1028–29. However, both simple assault and aggravated assault are defined in Miss.Code Ann. § 97–3–7 (rev.1994), and each of these crimes contains very specific elements, none of which are contained in the indictments. Therefore, the Court concludes that "to do violence" does not define either simple or aggravated assault with the specificity required by *Berryhill*, if

that is indeed the crime upon which the burglary was predicated.

**14.** Lockett asserts that both indictments are void because they do not specify the crime or crimes comprising the burglary charge. Because the Court concludes that only that portion of the indictments containing the intent to do violence prong is invalid, the Court will rule that only that portion of each indictment is void. *See Berryhill* at 253, ¶ 10 (discussed *supra* at 1024).

tended to do violence and did not argue that he intended to commit the crime of larceny. As stated in *Fisher, see supra* at 1028, the prosecutor was required to prove both underlying crimes upon which the burglary charge was based in order to prove the burglary, and thus, the capital murder.

Furthermore, each of Lockett's juries was instructed that the burglary charge could be predicated on Lockett's "intent to, once inside, *either* steal the personal property situated therein *or* to unlawfully do violence to the person situated therein." Case 1 (R. 651–52); Case 2 (R. 640).[15] Based upon the prosecutor's arguments in each case, this Court simply cannot assume that each jury disregarded such argument and based its decision solely on the crime of larceny, rather than on the "non-crime" of "to unlawfully do violence." Even if the jury did convict based solely upon the larceny charge, because the indictments were stated in the conjunctive, the State was obligated to prove both the crime of larceny and the "non-crime" of "to unlawfully do violence." Because the indictments were fatally defective in this regard, Lockett's convictions for capital murder must be vacated.

### IV. *Conclusion*

For the reasons set forth in this opinion, the Court finds that the portions of each indictment charging Lockett with capital murder based upon the underlying felony of burglary, predicated on the phrase "to unlawfully do violence" are void. The portions of the indictments predicated upon the underlying felonies of robbery and/or kidnapping and the portions charging burglary predicated on the underlying felony of larceny remain valid. However, because Lockett was not informed of the essential elements comprising the charge of burglary, and because there is a reasonable likelihood that each jury based its verdict upon the void portion of each indictment, *see Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991), Lockett's convictions for capital murder must be vacated. Fur-

thermore, because the indictments are stated in the conjunctive, with the valid larceny portion of the indictment joined to the invalid portion "to unlawfully do violence," Lockett's convictions for capital murder must be vacated. The Court is mindful of the gruesome facts of this case. The Court, however, is bound by applicable Mississippi law as recently clarified in *Berryhill.* As this Court has previously recognized, there is no doubt that Lockett murdered John Earl and Geraldine Calhoun, and Lockett has not argued to the contrary. The narrow issue before this Court in this particular Motion, however, is whether Lockett is guilty not just of murder, but of capital murder as defined by Mississippi law. That determination must be made by a jury of Lockett's peers based upon a valid indictment. This Court is powerless to revise an indictment to accommodate the result reached by the respective juries resulting in Lockett's capital murder convictions.

IT IS THEREFORE ORDERED that the Petitioner's Motion to Alter or Amend Judgment Pursuant to Fed.R.Civ.P. 59(e) should be and hereby is granted.

IT IS FURTHER ORDERED that the capital murder convictions and subsequent death sentences imposed upon Carl Daniel Lockett for the murders of John Earl and Geraldine Calhoun are hereby vacated.

IT IS FURTHER ORDERED that the State of Mississippi, has three options with regard to the fate of Carl Daniel Lockett: (1) the State of Mississippi may initiate proceedings for the retrial of Carl Daniel Lockett in the appropriate trial court within ninety (90) days of the entry of this opinion on the basis of the valid portions of the indictment; (2) the State of Mississippi may seek a new indictment against Carl Daniel Lockett for these murders upon the next meeting of the appropriate grand jury or within ninety (90) days of the entry of this opinion, whichever occurs first; or (3) the State of Mississippi may resentence Carl Daniel Lockett for simple murder [16] for the deaths of John Earl and

---

**15.** Lockett has not moved for the vacation of his conviction on the basis of these jury instructions, at least not in the current Motion before the Court. However, because the indictments were

stated in the conjunctive, the jury instructions should also have been stated in the conjunctive.

**16.** Because simple murder is a lesser included offense of capital murder and because this Court

Geraldine Calhoun within ninety (90) days of the entry of this opinion. These options are for the State of Mississippi, and not this Court, to determine.

has concluded that only the capital murder convictions should be vacated, Lockett may be resentenced for simple murder in both cases.